The Attorney General is in receipt of your request for an opinion, wherein you ask, in effect, the following question: "Would the term 'solicitation of contributions' in the 18 O.S. 552.3 [18-552.3](b) (1978) include the sale of tickets for a special event such as a concert where the tickets are being sold for the benefit of charity?" In order to answer the above question, one must refer to the new Oklahoma Solicitation of Charitable Contributions Act found at 18 O.S. 552.1 [18-552.1] et seq. (1978). 18 O.S. 552.3 [18-552.3] [18-552.3](a) (1978) states as follows: "No charitable organization, except those specifically exempt under 18 O.S. 552.4 [18-552.4] of this title, shall solicit or accept contributions from any person in this state by any means whatsoever until such charitable organization shall have registered with the State Auditor and Inspector and filed information, as required by this act, on forms approved by that office . . . This registration shall not be deemed to constitute endorsement by the state or by the State Auditor and Inspector of the charitable organizations so registered, and that office shall immediately revoke the registration of any person who directly or indirectly misrepresents the effect of registration hereunder to any donor or prospective donor. The information so filed shall be available to the general public as a matter of public record. The forms containing such information shall be sworn to and shall include the following: "(1) The name under which the charitable organization intends to solicit or accept contributions, and the identity of the charitable organization by or for whom the solicitation is to be conducted; "(2) The address of the charitable organization and the names and addresses of officers, directors, trustees and executive personnel; "(3) The purposes for which the contributions solicited or accepted are to be used; provided, however, no contribution or any portion thereof shall enure to the private benefit of any voluntary solicitor; "(4) The person who will have custody of the contributions; "(5) The persons responsible for the distribution of funds collected; "(6) The period of time during which such solicitation is to be conducted; "(7) A description of the method or methods of solicitation in such detail as may from time to time be determined by the State Auditor and Inspector; "(8) Whether such solicitation is to be conducted by voluntary unpaid solicitors, by paid solicitors, or both; "(9) If in whole or in part by paid solicitors, the name and address of each professional fund raiser supplying such solicitors, the basis of payment and the nature of the arrangement, including a copy of the contract or other agreement between the charitable organization and the professional fund raiser, the specific amount or percentage of compensation, or property of any kind or value to be paid or paid to the professional fund raiser, the percentage value of such compensation as compared (a) to the total contributions received and (b) to the net amount of the total contributions received; and "(10) Such additional information as may be deemed necessary and appropriate by the State Auditor and Inspector in the public interest or for the specific protection of contributors." Also, Section B of the same statute provides: "No charitable organization, professional solicitor or professional fund raiser shall be registered by the State Auditor and Inspector where the professional fund raiser or professional solicitor would receive more than ten percent (10%) of the net receipts from the solicitation contributions, nor where the charitable organization whose name is used would receive less than ninety percent (90%) of said receipts, nor when the board of directors of the charitable organization would not have full control of all funds collected." Furthermore, 18 O.S. 552.7 [18-552.7] (1978) provides in part: "No person shall act as a professional fund raiser for any charitable organization, including those organizations listed under 18 O.S. 552.4 [18-552.4] of this title, until he has first registered with the State Auditor and Inspector." And finally, 18 O.S. 552.8 [18-552.8] governs contracts between fund raisers and charities as follows: "All contracts or other agreements entered into by such professional fund raisers and charitable organizations shall be in writing and true and correct copies thereof shall be kept on file in the offices of the charitable organization and the professional fund raiser for a period of three (3) years from the date of solicitation of contributions provided for therein actually commences. Such contracts shall be available for inspection and examination by the State Auditor and Inspector and other authorized agencies. At least one (1) copy of every contract or other agreement shall be on file at all times and shall be available to the general public as a matter of public record. The State Auditor and Inspector may require the use of standard contract forms and no contract shall be valid unless prior approval thereof is given by that office." (Emphasis added) These provisions are tied to the definitions found in 18 O.S. 552.2 [18-552.2] (1978) "Definitions. — As used in this act:" "1. 'Person' means any individual, organization, group, association, partnership, or corporation; "2. 'Charitable organization' means any benevolent, philanthropic, patriotic, eleemosynary, educational, social, civic, recreational, religious, or any other person performing or purporting to perform acts beneficial to the public; "3. 'Contribution' means the promise or grant of any money or property of any kind or value; "4. 'Professional fund raiser' means any person who for compensation or other consideration plans, conducts or manages in this state the solicitation of contributions for or on behalf of any charitable organization or any other person, or who engages in the business of or holds himself out to persons in this state as independently engaged in the business of soliciting contributions for such purpose; and "5. 'Professional solicitor' means any person who is employed or retained for compensation or other consideration of any kind whatsoever by a professional fund raiser to solicit contributions in this state for or on behalf of any charitable organization or any other person." These provisions, in conjunction with the other parts of the Act, provide a system of regulation wherein charities may be registered without regard to the amount of solicited money that actually goes to the charitable projects. Fund raisers who solicit money for charities in order to make a personal profit are restricted to ten percent (10%) of "net receipts". 18 O.S. 552.3 [18-552.3](b) (1978). In no case could the charity pay the fund raisers a fee of more than ten percent (10%) of the net proceeds. A legal analysis of the Solicitation of Charitable Contributions Act would begin with 18 O.S. 552.3 [18-552.3], quoted above. It must be noted that in this section there is a requirement for registration for charities who solicit or accept contributions "by any means whatsoever". This phrase must be interpreted to show a legislative intent to include in the legislative frame work any and all methods by which the name of the charity might be used in raising money. Therefore, a special event-type charity would come under the purview of the above statutes. The Supreme Court has held many times that in construing statutes, meaning should be given that makes every phrase in the statute operative. Independent School District No. 1 of Tulsa County v. Albus, 572 P.2d 554 (1977); Street v. Bethany Fireman's Relief and Pension Fund, 555 P.2d 1295 (1976). It should be further noted that the Act, when taken as a whole, shows a legislative intent for regulation of all dealings between professional fund raisers and professional solicitors. 18 O.S. 552.7 [18-552.7] (1978) and 18 O.S. 552.9 [18-552.9] (1978). These statutes provide as follows: "No person shall act as a professional fund raiser for any charitable organization, including those organizations listed under 18 O.S. 552.4 [18-552.4] of this title, until he has first registered with the State Auditor and Inspector." (Emphasis added) Also, 18 O.S. 552.9 [18-552.9] (1978) states: "Every professional solicitor employed or retained by a professional fund raiser required to register shall, before accepting employment with such professional fund raiser, register with the State Auditor and Inspector." As stated previously, 18 O.S. 552.8 [18-552.8], set out supra, provides that "all contracts or other agreements" that are entered into between a professional fund raiser and a charity must be on file and must be approved by the State Auditor and Inspector before they can become affected. This provision makes no reference to an exclusion for special events. Likewise, 18 O.S. 552.7 [18-552.7] and 18 O.S. 552.9 [18-552.9] provide for registration of every person who shall act as a professional fund raiser or a professional solicitor. These sections, of course, must be read in conjunction with the definitions of professional fund raiser and professional solicitor found in 18 O.S. 552.2 [18-552.2], cited supra. The definitions indicate that professional fund raisers are those who conduct or manage "the solicitation of contributions", and the definition also indicates that "professional solicitor means any person who is employed or retained for compensation or other consideration of any kind whatsoever by a professional fund raiser to solicit contributions in this state." Furthermore, one must incorporate the definition of contribution found supra in 18 O.S. 552.2 [18-552.2], which means "the promise or grant of any money or property of any kind or value." The tickets being sold for the benefit of charity would constitute property for value. It is, therefore, the opinion of the Attorney General that the sale of tickets for the benefit of a charity will constitute solicitation of contributions even though it is for a special event. Therefore, the above question should be answered in the affirmative. (STEPHEN F. SHANBOUR) (ksg)